**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAUL ADAMS,<br><br>                          Plaintiff,<br>vs.<br><br><br>LARRY SMALL, et al.,<br>                          Defendant. | CASE NO. 10cv1211-MMA (POR)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTIONS TO DISMISS;**<br><br>[Doc. Nos. 31, 33, 47]<br><br>**(2) DENYING PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT**<br><br>[Doc. No. 45] |

      On February 28, 2011 , Plaintiff Paul Adams, a state prisoner proceeding *pro se*, filed a Second Amended Complaint [Doc. No. 15] alleging various violations of his civil rights by numerous prison officials, pursuant to Title 42 of the United States Code, section 1983. This matter is currently before the Court for the resolution of the following pending motions: (1) Defendants Aceves, Anaya, Ochoa, Silva, Small, and Trujillo's motion to dismiss [Doc. No. 31]; (2) Defendant Cate's motion to dismiss [Doc. No. 33]; (3) Plaintiff's motion to amend his complaint [Doc. No. 45]; and (4) Defendant Waters and Foston's motion to dismiss [Doc. No. 47]. For the reasons set forth below, the Court **GRANTS** the pending motions to dismiss and **DENIES** Plaintiff's motion to amend his complaint.

## BACKGROUND

Plaintiff complains of events beginning on or about December 10, 2007 at California Correctional Institution in Tehachapi, California, and continuing after Plaintiff's transfer to Calipatria State Prison in Calipatria, California.[1] The following description of events is taken from the pleadings and is not to be construed as findings of fact by the Court.[2]

On December 10, 2007, Plaintiff was received by officials at California Correctional Institution ("CCI") in Tehachapi, California, and processed for purposes of determining any potential gang affiliations prior to long term placement at another facility. Defendant Waters, reception counselor, interviewed Plaintiff, asking him a series of personal questions. Plaintiff advised Defendant Waters regarding his date of birth – June 18, 1974; his place of birth – Hollywood; his race – "Gypsy"; his housing preference – with Hispanics; and his gang affiliation – none. Defendant Waters then asked Plaintiff to remove his shirt so that his tattoos could be photographed. Among his many tattoos, Plaintiff has a tattoo on his belly that spells out "GYPSY," and the initial "GMKE" on his right bicep. When asked, Plaintiff advised Defendant Waters that the initials GMKE stand for "Gypsy Music Kings Empire," a music studio he was attempting to establish prior to his incarceration. Plaintiff maintained that he was not affiliated with a gang.

According to Plaintiff, based on his tattoos, Defendant Waters falsely recorded in his Central File ("C-File") that Plaintiff is affiliated with the Gypsy Music Kings Souther Siders gang, and that his ethnicity is Mexican (rather than Gypsy). Based on this inaccurate information, Plaintiff received a gang classification score of 60 points, which resulted in Plaintiff's placement in Level IV maximum security for an extra year and a half.[3]

On October 2, 2009, Plaintiff received an Inmate 128-G Classification chrono and discovered

---

[1] Plaintiff is currently incarcerated at Ironwood State Prison in Blythe, California.

[2] Because this matter comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint and must also construe the complaint, and all reasonable inferences drawn therefrom, in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

[3] The regulation governing prisoners' housing assignments states that "[a]n inmate with a placement score of 52 and above shall be placed in a Level IV facility." Cal. Admin. Code tit. 15, § 3375.1(a)(4).

1  for the first time that Defendant Waters has falsely recorded him as affiliated with the Gypsy Music
2  Kings South Siders gang. Plaintiff contacted his assigned case worker, Defendant Aceves, who
3  confirmed the classification, advised Plaintiff that his gang affiliation status negatively impacted his
4  status, and informed Plaintiff that he would have the opportunity to challenge the classification at his
5  next appearance before a classification committee. Thereafter, on October 6, 2009, Plaintiff
6  submitted a CDC 602 form, appealing his classification as a gang member. Defendants Silva and
7  Trujillo were assigned to interview Plaintiff regarding the appeal. Plaintiff claims that although
8  Defendants Silva and Trujillo investigated and discovered that Plaintiff was not a gang member,
9  they refused to correct his C-File. Plaintiff appealed to the Second Level of review and his appeal
10 was partially granted by Defendant Ochoa, who concluded that there was insufficient information
11 available to document Plaintiff's affiliation with the Gypsy Music Kings South Siders.

    Based on this partial grant, Plaintiff appealed to the Director's Level of review. Defendants Wilkins and Foston denied his appeal, finding that Plaintiff's allegations of inaccuracies in his C-File were contradicted by documentation confirming his ethnicity as Hispanic/Mexican and his gang status as an active member of the Gypsy Music Kings South Siders. As such, Defendants Wilkins and Foston found Plaintiff's request to have the alleged errors in his C-File corrected to be without merit.

    On October 27, 2009, Plaintiff met with a classification committee, consisting of Defendants Aceves and Anaya, where he explained that his records were inaccurate and that he was not affiliated with any gang. According to Plaintiff, the committee members rejected his contentions regarding the falsification of his C-File and the inaccuracy of classification as a gang member.

    Based on these events, Plaintiff alleges violations of his First Amendment right to freedom of association and his Fourteenth Amendment rights to due process and equal protection.

### DISCUSSION

*1.     Legal Standard*

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). "The old formula – that the complaint must not be dismissed

1 unless it is beyond doubt without merit – was discarded by the *Bell Atlantic* decision [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007)]." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004), citing *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003)); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

*2.     Standards Applicable to Pro Se Litigants*

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation omitted).

The court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d

1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted), citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)). Thus, before a *pro se* civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim-Panahi*, 839 F.2d at 623-24. But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

        3.        *Defendants Silva, Trujillo, Anaya, Aceves, Small, and Ochoa's Motion to Dismiss*

Plaintiff alleges that each of these six defendants violated his due process rights under the Fourteenth Amendment by failing to correct the purported factual errors in his C-File which resulted in his racial and gang classifications. Defendants Anaya and Aceves were members of the classification committee that reviewed his gang affiliation; Defendants Silva and Trujillo investigated the allegations in Plaintiff's 602 appeal; Defendant Ochoa denied Plaintiff's appeal at the Director's Level of review based on his finding of adequate documentation to support his racial and gang classifications; and Defendant Small was the warden at Calipatria at the time of the events in question.

        A)        <u>Fourteenth Amendment</u>

            I)        Due Process Claim

Plaintiff alleges that Defendants Silva, Trujillo, and Ochoa violated his due process rights based on their participation in Plaintiff's administrative appeal process. However, Defendants' actions in responding to Plaintiff's appeals do not give rise to any claims for relief under Section 1983 for violation of due process. Prisoners have no constitutional right to an effective grievance or appeal procedure. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal procedure), cert. denied, 541 U.S. 1063 (2004); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a section 1983 action. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails to state a cognizable claim for the processing and/or reviewing of his 602 appeal.

Plaintiff bases his claim against Defendants Aceves and Anaya on their refusal to revise his

gang classification. However, prisoners have no federal due process right to a particular gang classification or a particular classification score. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987), citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (no constitutional right to particular classification). Although California has created a regulatory scheme from which a protected liberty interest in classification and custody designation might arise, the liberty in question is not protected by the Due Process Clause because the deprivation of a correct classification or custody designation cannot be characterized as one of "real substance," i.e., it does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484 (1995), or "inevitably affect the duration of [a] sentence," *id.* at 487. As such, Plaintiff fails to state a due process claim against Defendants Aceves and Anaya because the allegedly incorrect classification determination does not implicate a substantive liberty interest.

### ii) Equal Protection Claim

Plaintiff alleges that Defendants discriminated against him by perpetuating his incorrect racial classification as a Mexican. According to Plaintiff, he is a Yugoslavian Gypsy.

In order to state an equal protection claim based on intentionally discriminatory treatment, Plaintiff must allege that a particular defendant treated him differently than other prisoners with an intent or purpose to discriminate against him based on membership in a protected class, such as race or ethnicity. *See Washington v. Davis*, 426 U.S. 229, 239-42 (1976). Plaintiff "must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (to state an equal protection claim, "a plaintiff in a section 1983 claim must show that officials intentionally acted in a discriminatory manner"); *see also City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) ("proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause").

Although Plaintiff alleges that he was discriminated against, he sets forth no facts supporting his claim that Defendants intentionally discriminated against him based on his race. Accordingly,

Plaintiff fails to state a viable equal protection claim.

### B) First Amendment

Plaintiff generally alleges that Defendants violated his First Amendment right to freedom of association by incorrectly classifying him as a gang member. However, freedom of association is necessarily curtailed in the prison context. *See Dunn v. Castro*, 621 F.3d 1196, 1202 (9th Cir. 2010), quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("freedom of association is among the rights least compatible with incarceration").

When considering a claim based on a prison rule or regulation restricting a prisoner's First Amendment rights, the Court applies the factors set forth in *Turner v. Safley*. 482 U.S. 78, 89 (1987). *See also Johnson v. California*, 543 U.S. 499, 510 (2005) (noting that prison regulations that restrict a prisoner's First Amendment rights are not unconstitutional if they are reasonably related to legitimate penological interests). The prison rule or regulation "must be found reasonable in light of four factors: (1) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest put forward to justify it; (2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation)." *Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir.), citing *Turner*, 482 U.S. at 89-90), cert. denied, 555 U.S. 1031 (2008).

Prison officials undoubtedly "have a legitimate penological interest in stopping prison gang activity." *Bruce*, 351 F.3d at 1289. Prison regulations that permit officials to premise inmates' housing assignments and conditions based in part on their gang affiliations are reasonably related to a legitimate penological interest. Accordingly, Plaintiff's allegations fail to state a claim pursuant to the First Amendment.

### C) Supervisory Liability

Plaintiff's claims against Defendant Small are based on his allegation that Small, as warden, should known about his incorrect gang classification and acted to correct the error, removed the falsified information from his C-File, and adequately supervised his subordinates who failed to do

so. However, prisoners may not maintain federal civil rights actions against prison officials based on their supervisory positions. Supervisory personnel generally are not liable under 42 U.S.C. § 1983 on any theory of respondeat superior. *See, e.g., Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A supervisory official may be liable under Section 1983 only if he or she was personally involved in the constitutional deprivation; "knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury"; or acquiesced in the constitutional deprivations forming the basis of the complaint. *Dubner v. City & County of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001). Thus, to the extent Plaintiff alleges a due process claim against Defendant Small, or against any other defendant based solely on their positions as supervisors, his allegations fail to state a Fourteenth Amendment claim.

*4.     Defendant Cate's Motion to Dismiss*

Plaintiff's allegations against Defendant Cate, Secretary of Corrections, are substantially similar to his allegations against Defendant Small, discussed *supra*. Plaintiff claims that Defendant Cate failed to properly supervise his subordinates, should have known about the errors in his C-File, and should have corrected his gang and racial classifications. As noted above, supervisory personnel generally are not liable on a respondeat superior theory, nor are they vicariously liable in the absence of a state law imposing such liability. *See Redman v. County of San Diego*, 942 F.2d 1435, 1443-44 (9th Cir. 1991), cert. denied, 502 U.S. 1074 (1992). A supervisory official may be liable under Section 1983 only if he personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See id*. at 1446-1447.

Plaintiff fails to allege any facts to show that Defendant Cate personally participated in the events in question. Plaintiff's claims are based solely upon Cate's supervisory position and as such, he fails to state a plausible federal civil rights claim against Defendant Cate.

*5.     Defendants Waters and Foston's Motion to Dismiss*

Plaintiff's allegations against Defendant Waters are his most detailed. He alleges Waters violated his due process rights by using inaccurate information to classify Plaintiff as a gang

1 member, and score Plaintiff at a 60, resulting in his placement in Level IV maximum security. At
2 the higher level of security, Plaintiff was deprived of the opportunity to have a job, or access to
3 education, yard time, and outside activities afforded to inmates housed in general population.
4 Plaintiff also spent three months in administrative segregation on a "medical hold," which he
5 believes was a result of his higher level security placement. Plaintiff also complains that Defendant
6 Waters deliberately placed him in an extremely dangerous situation by housing him with other gang
7 members.

8 Prisoners do not have a protected liberty interest in the classification decisions that resulted
9 in housing placements at various levels of security. Pursuant to *Sandin v. Conner*, 515 U.S. 472
10 (1995), a prisoner can show a liberty interest under the Due Process Clause of the Fourteenth
11 Amendment only if he alleges a change in confinement that imposes an "atypical and significant
12 hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484 (citations omitted). The
13 Ninth Circuit has found specifically that claims regarding security level increases which occur as a
14 result of a higher classification score do not amount to atypical and significant hardship on an
15 inmate in relation to the ordinary incidents of prison life. *Myron v. Terhune*, 476 F.3d 716, 718 (9th
16 Cir. 2007). In *Myron*, the classification decision resulted in the plaintiff being housed at a Level IV
17 prison rather than Level III prison. The court in *Myron* explained that, on the record, the conditions
18 in a Level IV facility did not present an atypical and significant hardship. "There is no showing that
19 the conditions at Level IV differ significantly from those 'imposed upon inmates in administrative
20 segregation and protective custody' . . ." *Myron*, 476 F.3d at 718.

21 Plaintiff does not have a recognized liberty interest in remaining free from administrative
22 segregation, and his allegations that he did not qualify for placement there and that he faced
23 potential danger while housed there are insufficient to show that one has been created. *See Sandin v.*
24 *Conner*, 515 U.S. 472, 486 (1995) (holding that administrative segregation in and of itself does not
25 implicate a protected liberty interest); *Myron*, 476 F.3d at 718; *May v. Baldwin*, 109 F.3d 557, 565
26 (9th Cir. 1997). Thus, Plaintiff fails to state a cognizable due process claim against Defendant
27 Waters.

28 Plaintiff appears to allege that Defendant Waters retaliated against him as well. "[A] viable

claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted), citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994).  Plaintiff fails to state a plausible claim for retaliation against Defendant Waters.  Aside from the allegation that Waters acted adversely towards Plaintiff by falsifying his C-File record and mis-classifying him as a gang member and a Mexican, Plaintiff has failed to provide sufficient factual allegations to meet any of the five factors required to state a retaliation claims.  *See Rhodes*, 408 F.3d at 567-68; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The remainder of Plaintiff's claims against Defendant Waters and Defendant Foston fail for reasons similar to those stated above.  Plaintiff fails to state either a plausible First Amendment freedom of association claim or a plausible Fourteenth Amendment equal protection claim against these defendants.  To the extent Plaintiff alleges a due process claim against Defendant Foston based on his denial of Plaintiff's Director's Level review of his 602 appeal, the claim fails.  *Buckley,* 997 F.2d at 495; *Ramirez*, 334 F.3d at 860 (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure).

    6.  *Plaintiff's Motion for Leave to Amend*

Plaintiff moves for leave to amend his complaint to add a new claim and three new defendants.  "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'"  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 445 F.3d 1132, 1136 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).  However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile."  *Id.*  The factor of "'[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend.'"  *Owens v. Kaiser Foundation Health Plan, Inc*., 244 F.3d

1  708, 712-13 (9th Cir. 2001), quoting *Bowles v. Reade*, 198 F.3d 752, 757-58 (9th Cir. 1999).
2  However, "'[w]here the party seeking amendment knows or should know of the facts upon which
3  the proposed amendment is based but fails to include them in the original complaint, the motion to
4  amend may be denied,'" *E.E.O.C. v. Boeing, Co.*, 843 F.2d 1213, 1222 (9th Cir. 1988), quoting
5  *Jordan v. County of L.A.*, 669 F.2d 1311, 1324 (9th Cir. 1982), vacated on other grounds, 459 U.S.
6  810 (1982), and the "court's discretion to deny leave to amend is particularly broad where the court
7  has already given the plaintiff an opportunity to amend his complaint." *Fidelity Financial Corp. v.*
8  *Federal Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986).

9      Plaintiff seeks leave to amend his complaint to add three new defendants and an additional
10  claim arising out of facts and events that appear to be wholly unrelated to the claims at issue in this
11  litigation. Federal Rule of Civil Procedure 18(a) allows multiple claims against a single party but
12  does not allow Plaintiff to bring unrelated claims against different defendants in the same action.
13  *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Thus, to the extent Plaintiff wishes to
14  pursue this new claim against these newly identified defendants, he must do so in a separate lawsuit.

15      Furthermore, the above alleged facts do not demonstrate a violation of any of Plaintiff's
16  federal or constitutional rights by any of the defendants currently subject to suit. Keeping in mind
17  that Plaintiff is proceedings *pro se*, and consistent with the liberal application of Rule 15, the Court
18  has already provided Plaintiff with two opportunities to amend his complaint, after identifying the
19  deficiencies with each proposed pleading. At this juncture, the Court must conclude that allowing
20  further amendment of Plaintiff's current claims would be futile.

## CONCLUSION

22      Based on the foregoing, the Court **GRANTS** Defendants' motions to dismiss and **DENIES**
23  Plaintiff's motion for leave to amend his complaint. This order disposes of all claims against all
24  parties. The Clerk of Court is instructed to enter judgment accordingly and terminate the case.

25      **IT IS SO ORDERED**.

26  DATED: January 31, 2012

*/s/ Michael M. Anello*

Hon. Michael M. Anello
United States District Judge

- 11 -   10cv1211